## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NICK FRONTCZAK, as the Public
Administrator for the Estate of MICHAEL
McSHANE, deceased,

      Plaintiff,

v.                                  Case No. 18-13781

CITY OF DETROIT, et al.,

      Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO COMPEL, GRANTING IN PART PLAINTIFF'S MOTION TO EXTEND DISCOVERY, GRANTING DEFENDANTS' MOTION TO FILE A SUR-REPLY, AND DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On March 20, 2014, Defendants searched Plaintiff's[1] home pursuant to a search warrant supported by the affidavit of Detroit Police Officer Defendant Matthew Bray. In his affidavit, Bray incorporates information obtained from a confidential source registered with the City of Detroit as Source of Information ("SOI") #2149. Plaintiff filed a three-count amended complaint related to this search, containing claims for illegal search and seizure, municipal liability, and civil conspiracy. The crux of Plaintiff's illegal search claim turns on whether Defendants possessed probable cause to obtain a search warrant. Plaintiff asserts that they did not, alleging that Bray's affidavit contained materially false information.

---

[1] The court uses "Plaintiff" to refer to Nick Frontczak acting as the Public Administrator for the Estate of the deceased, named Plaintiff Michael McShane.

Currently pending before the court are Plaintiff's motions to compel the deposition of SOI #2149 and to extend discovery. Plaintiff seeks to extend discovery to depose SOI #2149 and Detroit Police Chiefs Ralph Godbee and James Craig. Additionally, Plaintiff requests an extension of the discovery deadline to pursue additional information related to a recent public statement made by Wayne County Prosecutor Kym Worthy and to further investigate alleged fraudulent search warrant affidavits prepared by Defendants. Also pending before the court is Defendants' motion to file a sur-reply to Plaintiff's motion to compel and Defendants' motion for summary judgment. Having reviewed the briefs, the court concludes that no hearing is necessary. *See* E.D. Mich. 7.1(f)(2). For the reasons explained below, the court will deny Plaintiff's motion to compel, grant in part Plaintiff's motion to extend discovery, grant Defendants' motion to file a sur-reply, and deny without prejudice Defendants' motion for summary judgment.

## I. BACKGROUND

Plaintiff alleges that, on March 20, 2014, Defendant Officers Bray, Tourville, Beasley, Barnett, and Matelic searched his home located at 1556 W. Troy in Ferndale, Michigan pursuant to a search warrant and under the supervision of Defendant Geelhood. (ECF No. 43, PageID.643.) The search warrant was based on the affidavit of Defendant Bray, which alleged the following facts:

> The Affiant is working in conjunction with other members and SOI #2149. SOI #2149 has been used by members of the Narcotics Division on over one hundred (100) occasions, resulting in the arrests of over one hundred (100) persons for narcotic and related offenses, SOI #2149 has provided credible and reliable information in the past that has yielded significant quantities of Marijuana, heroin and cocaine.

> On March 19th, 2014 affiant met with SOI #2149. The SOI was searched for drugs and money, with none being found. The SOI was issued a quantity of Detroit Police Funds and instructed to attempt a purchase of illicit drugs at 1556, W. Troy. The SOI was then observed to go directly to front of target location and met up with seller. Seller and SOI went up into target location. The SOI returned a brief moment later (less th[a]n two minutes) and turned over a quantity of suspected marijuana stating that it was purchased from the SELLER at the target location. The SOI was again searched for drugs and money, with none being found. The suspected marijuana was transported to Narcotics Division Offices for analysis by P.O. Johnson #4011 and placed in LSF# N05216311. The test proved positive for marijuana.

(ECF No. 57-2, PageID.769.)

In the instant motion to compel, Plaintiff seeks to depose SOI #2149 about the facts alleged in Bray's affidavit, arguing that the factors relevant to this inquiry weigh in favor of disclosing the identity of SOI #2149.

Defendants respond that disclosure of the SOI is not appropriate. Defendants submit several pieces of evidence which they assert corroborate Bray's search warrant affidavit. First, Defendants submit a Detroit Police Department Daily Activity Log dated March 19, 2014, which contains an entry stating that law enforcement conducted a controlled buy with the assistance of SOI #2149 at Plaintiff's residence. (ECF No. 61-3, PageID.1073.) Second, they present a Request for Laboratory Service sheet purporting to show that Bray submitted for testing marijuana allegedly purchased by the SOI from Plaintiff. (ECF No. 61-4, PageID.1076.) And third, Defendants point to a "Pre-Buy

3

Property Receipt"[2] generated in response to the controlled buy. (ECF No. 61-5, PageID.1078.)

Plaintiff casts doubt on the validity of the controlled buy. He points to Defendants' failure to produce a voucher payment in response to his fourth request for interrogatories which Plaintiff contends should have been generated for the controlled buy. (ECF No. 57, PageID.781; ECF No. 57-7, PageID.831.) Defendants admit that the voucher has been lost. (ECF No. 61, PageID.1054.)

## II. STANDARD

Federal Rule of Civil Procedure 37(a)(3) provides that a party may move to compel the deposition of a person whose deposition was properly noticed under Rule 30. Fed. R. Civ. P. 37(a)(3), 30.

Under Federal Rule of Civil Procedure 16(b)(4), a court may modify its scheduling order and extend discovery "for good cause". Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements[.]" *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 478 (6th Cir. 2014) (internal quotation and citation omitted). The Sixth Circuit has highlighted several factors relevant to this inquiry: "(1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4)

---

[2] According to Plaintiff, the Pre-Buy Property Receipt suggests that the marijuana used in the control buy was destroyed the same day it was received, March 19, 2014. (ECF No. 62, PageID.1217.) Defendants move to file a sur-reply to clarify that the Pre-Buy Property Receipt lists March 19, 2014 as the date on which the marijuana was received and that it was not destroyed until June 2014. (ECF No. 64-1, PageID.1265.) Plaintiff filed no response to this motion. The court will grant Defendants' motion to file a sur-reply and receives the information contained therein.

whether the moving party was dilatory; and (5) whether the adverse party was responsive to prior discovery requests." *Dowling v. Cleveland Clinic Found*, 593 F.3d 472, 478 (6th Cir. 2010).

### III. DISCUSSION

### A. Motion to Compel

Plaintiff moves to compel the deposition of SOI #2149 who supplied information to Defendant Bray and who allegedly participated in the controlled buy at Plaintiff's home. Plaintiff devotes a considerable portion of his brief to chronicling criminal acts and instances of misconduct committed by members of the Detroit Police Department's Narcotics Unit, including the misconduct of Defendants Geelhood, Barnett, Matelic, and Tourville, each of whom participated in the execution of the search warrant on Plaintiff's home. (ECF No. 57, PageID.778–80.)

In the amended complaint, Plaintiff alleges that "upon information and belief . . . Defendant Bray provided false testimony regarding information that he alleges he received from a 'SOI # 2149' and otherwise fabricated the bases of probable cause by falsely testifying as to a controlled buy between the SOI and Plaintiff McShane." (ECF No. 21, PageID.104 ¶ 24). If this allegation is true, Plaintiff argues, then there is a "strong likelihood" that Plaintiff will be entitled to summary judgment on his illegal search claim because Defendants could not establish probable cause for the warrant. (ECF No. 57, PageID.775.) Plaintiff principally relies on the balancing test first articulated in *Roviaro v. United States*, 353 U.S. 53 (1957) in support of his assertion that the deposition of SOI #2149 is necessary for the fair adjudication of this case. In response, Defendants argue that Plaintiff's "mere suspicion" that Bray's affidavit contains false

information does not justify the disclosure of the SOI's identity under *Franks v. Delaware*, 438 U.S. 154 (1978). (ECF No. 61, PageID.1051.)

In *Roviaro*, the Court addressed the so-called "informer's privilege" under which the Government sought to protect the identity of an informant who participated in the drug offense giving rise to the plaintiff's conviction. *Roviaro*, 353 U.S. at 55. The Court held that the trial court committed reversible error by allowing the Government to refuse to disclose the informant's identity. *Id.* In reaching this determination, the Court explained that the informer's privilege is not absolute and is limited by "the fundamental requirements of fairness." *Id.* at 60. Specifically, the Court explained that "[w]here the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61. The Court recognized that "no fixed rule with respect to disclosure is justifiable," and reasoned that courts must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62. The Court also stated that "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors" should be considered as part of this balancing inquiry. *Id.*

The Sixth Circuit extended the *Roviaro* balancing test to the civil context in *Holman v. Cayce*, 873 F.2d 944 (6th Cir. 1989). The *Holman* plaintiff brought a § 1983 claim against the defendant officer responsible for shooting him during an attempted burglary. After receiving a tip from a confidential source, the officer waited for the plaintiff in the unoccupied structure that the plaintiff intended to rob. *Holman*, 873 F.2d at 945. The plaintiff sought to compel the identity of the confidential source. *Id.* On

6

appeal, the Sixth Circuit applied the *Roviaro* balancing test and held that the facts of the case justified the nondisclosure of the informant's identity. The court explained that "[i]n the context of civil litigation, the emphasis shifts from consideration of whether disclosure is necessary to an accused's defense to whether disclosure is essential to the fair determination of a party's cause." *Id.* at 946. The court noted that the "outcome" in civil cases are less "significant" than criminal matters of guilt and innocence, and further explained that:

> [W]here the informant was neither a witness to nor an active participant in the conduct which gave rise to the civil cause of action, the party seeking to compel disclosure of the identity of a confidential government informant will shoulder a formidable burden in establishing a justification for overriding the privilege. Normally, that can be accomplished only by a compelling demonstration that the information sought from the informant is likely to influence the outcome of the case or is essential to the party's preparation for trial.

*Id.* at 947. Ultimately the court held the relevant factors weighed against disclosure of the informant's identity because the informant neither witnessed nor participated in the attempted burglary, making the potential relevance of the informant's testimony "speculative." *Id.* The court also heavily weighed the fact that the plaintiff was not seeking disclosure "in order for him to effectively defend himself against the serious criminal charge of burglary" but rather to pursue a civil case, in which "the need for this information was vastly different." *Id.*

Defendants acknowledge that *Roviaro* authorizes the court to set aside the informer's privilege when disclosure is "essential to a fair determination of a cause." (ECF No. 61, PageID.1055) (citing *Roviaro*, 353 U.S. at 59).) But Defendants urge the court to rely on *Franks v. Delaware*, 438 U.S. 154 (1978) for the governing legal standard.

7

In *Franks*, the Court held that a defendant is entitled to a veracity hearing to attack the basis for a search warrant's statement of probable cause when the defendant makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155. The Court explained that while there exists "a presumption of validity with respect to the affidavit supporting the search warrant[,]" this presumption could be overcome with a sufficient offer of proof. *Id.* at 171. However, the Court specifically limited its holding to attacks against a search warrant affiant; "The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." *Id.*

The court need not resolve the question of whether *Roviaro* or *Franks* supplies the governing legal standard for this case because, for the reasons explained below, the court concludes that Plaintiff fails to satisfy the requirements for disclosure under either standard.

First, the court concludes that Plaintiff has not made "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" to justify a *Franks* hearing. *Franks*, 438 U.S. at 155. At its core, Plaintiff's argument in support of disclosure is that because Detroit police officers submitted false affidavits in other cases then so too does it stand to reason that the instant affidavit contains falsities. But such conclusory assertions are insufficient to overcome the "presumption of validity" afforded to affidavits. *Franks*, 438 U.S. at 171. Plaintiff presents no facts suggesting that

8

*Defendant Bray* has been accused of creating false affidavits; Plaintiff's arguments directed at the misconduct of other officers in different cases present "[m]ere conjecture . . . about the possible relevancy of the informant's testimony [and are] insufficient to warrant disclosure." *United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985) (quoting *United States v. Gonzales*, 606 F.2d 70, 75 (5th Cir. 1979)). Plaintiff has not satisfied the high preliminary showing necessary to justify a hearing under *Franks*.

And second, the court concludes that relevant factors under the *Roviaro* balancing inquiry weigh in favor of nondisclosure.

Plaintiff, relying on factors considered by the court in *Hunt v. City of Toledo*, No. 10 CV 28962012, WL 262609 (N.D. Ohio 2012) (Armstrong, J.), lists a variety of factors he claims weigh in favor of disclosure. He lists: (1) Defendants' exclusive control over SOI #2149; (2) the presumption of fabrication[3] arising from Defendants' refusal to disclose the source, particularly in light of the admitted fabrication of search warrant affidavits by other members of the Detroit Narcotics Unit; (3) the relevance of the SOI's testimony to this case; (4) the exclusive reliance of the warrant on information obtained from the SOI; (5) the inability of the affidavit to establish probable cause absent information related to the SOI; (6) the involvement of the SOI in the controlled buy; and (7) the availability of in camera proceedings, protective orders, and other mechanisms to avoid chilling the cooperation of informants. (ECF No. 57, PageID.783–92.)

---

[3] The court observes that "[t]here is . . . a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. Thus, the court rejects any suggestion by Plaintiff that the affidavit is "presumed" invalid.

Defendants do not directly address these factors but argue that if Plaintiff cannot present sufficient evidence to justify a *Franks* hearing, then he should not be permitted to depose the SOI. (ECF No. 61, PageID.1061.)

In *Roviaro*, the Court stated that no "fixed rule" applies to the disclosure of an informant's identity but that the court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 61–62. Importantly, *Roviaro* involved a criminal case, and thus the factors considered by the Court in striking this balance included "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62. Requests for disclosure in civil cases, the Sixth Circuit explained, are less likely to outweigh the need to protect free communication because the stakes of civil cases are less "significant" compared to questions of guilt or innocence in the criminal context. *Holman*, 873 at 947. Upon consideration of this standard and the arguments advanced in the parties' briefs, the court concludes that the balance of factors weigh against disclosure.

The court acknowledges that SOI #2149 is alleged to have directly participated in the events giving rise to this case, that Bray's affidavit relies heavily on the involvement of SOI #2149, and that SOI #2149 remains under the control of Defendants. The court nonetheless concludes that these factors are insufficient to justify disclosure, bearing in mind that this is a civil case with "less significant" stakes to Plaintiff, and that there exists a legitimate need for Defendants to protect the identity of informants—perhaps most particularly those who have provided substantial assistance to law enforcement on more than a "hundred" occasions (ECF No. 57-2, PageID.769)—to encourage

10

continued public disclosure of criminality and protection of the SOI's safety. The court also weighs heavily that, apart from Plaintiff's purported "information and belief that Defendant Bray provided false testimony" (ECF No. 21, PageID.104 ¶ 24), Plaintiff has provided no actual evidence to suggest the *Defendant Bray* fabricated anything about the affidavit. Plaintiff's argument proceeds with a form of the fallacy of confirmation bias, specifically cherry-picking: the fact that *other* officers (may have) fabricated *other* warrant affidavits in *other* Instances does not mean that *this* officer fabricated the warrant affidavit in *this* case. The court is not persuaded.

In contrast, Defendants present probative evidence strongly corroborative of the occurrence of the controlled buys discussed in Bray's affidavit, specifically the Detroit Police Department Daily Activity Log, Request for Laboratory Service, and Pre-Buy Property Receipt. This evidence lends significant support to the affidavit's factual validity.

The court also weighs heavily Bray's independent observation and description of the controlled buy, especially considering that "a single controlled purchase is sufficient to establish probable cause to believe that drugs are present at the purchase location." *Bullock v. City of Detroit*, No. 19-1287, 2020 U.S. App. LEXIS 15495, at *3 (6th Cir. May 14, 2020) (quoting *United States v. Archibald*, 685 F.3d 553, 558 (6th Cir. 2012)). In light of Bray's independent observations, the relevance of the SOI's testimony is no more than speculative. *See Reid v. City of Detroit*, No. 2:18-CV-13681, 2019 WL 5895956 (E.D. Mich. Nov. 12, 2019) (Patti, M.J.) (denying plaintiff's motion to compel the deposition the SOI).

Plaintiff notes that Bray testified during his deposition that a voucher should have been produced in response to the controlled buy. As Plaintiff points out, Defendants cannot locate it, but the court assigns limited if any weight to the voucher's absence, particularly given Plaintiff's failure to attach the relevant portions of Bray's deposition testimony. (ECF No. 57, PageID.781.) That Plaintiff has already deposed Bray further weighs against disclosure. Based on the information contained in Plaintiff's brief, it would appear that Bray's deposition revealed no inconsistencies with the factual basis for the affidavit; if it had, the court reasonably assumes that Plaintiff would have relied on such inconsistencies in support of his present motion, i.e., presenting more substance than the threadbare and formulaic "information and belief" of falsity based on the purported conduct of other officers. At this juncture, Plaintiff's request to compel seems to be a final attempt to impugn the credibility of Bray following a deposition that failed to yield sufficiently damaging testimony.

The results of the search in this case—producing the materials sought in the warrant—lend at least some further support to the validity of the affidavit. Defendants correctly observe that the persuasive precedent on which Plaintiff relies each involved a search that failed to produce the sought contraband. *See May v. City of Detroit*, No. 08-13186, 2010 WL 1417752 (E.D. Mich. 2010) (Borman, J.); *Smith v. City of Detroit*, 212 F.R.D. 507, 510 (E.D. Mich. 2002) (Taylor, J.); *Hunt*, 2012 WL 262609. Though the result of a search is not proof of probable cause in a criminal context, nor dispositive of the warrant's validity because "[p]robable cause must exist when a warrant is issued," *United States v. Jeanetta*, 533 F.3d 651, 655 (8th Cir. 2008), the results may in a civil

context be of some probative value as to the possible relevance of an SOI's testimony.

As the court explained in *Hunt*:

> While it may be true, from a technical standpoint, that the results of the search of Plaintiffs' premises, coming up empty as they did, do not, with legal necessity and logical compulsion, reflect back on the legal sufficiency of the Affidavit for Search Warrant, the results of the search nonetheless, as a practical matter, do give rise to questions regarding the viability of the factual basis of the information that was averred in the Affidavit and, in turn, to concerns about which the deposition testimony of the CI could prove useful. In this regard, Defendants' would seem to want this Court to dismiss the significance of the fact that the raid came up empty handed. Certainly, it is fair to suggest that had the raid produced different results (e.g., cocaine, crack and related tools of the trade) it is unlikely that Plaintiffs would be bringing the instant action.

*Hunt*, 2012 WL 262609 *10.

Here, the search of Plaintiff's residence produced the contraband predicted by the warrant affidavit. As explained by the court in *Hunt*, the success of the search lends at least some support to the factual basis of the warrant. The court concludes that this factor, in addition to the factors explained above—including the civil nature of this suit, the corroboration of the warrant by Defendant's evidence and the independent observations of Bray, and Plaintiff's failure to provide any credible evidence supporting falsity—weigh against disclosure. The court will deny Plaintiff's motion to compel.

### B. Motion to Extend Discovery

Plaintiff requests a 60-day extension of the discovery deadline, which expired on April 3, 2020. This is the first discovery extension requested by either side. Plaintiff seeks to conduct the depositions of former Chiefs of Police of the City of Detroit, Ralph Godbee and James Craig—which were scheduled but adjourned due to the coronavirus pandemic—and to schedule the deposition of SOI #2149. (ECF No 63, PageID.1235.) Furthermore, Plaintiff seeks additional discovery related to alleged "fraudulent search

13

warrants" in light of a recent public statement made by Wayne County Prosecutor Kym Worthy in which Worthy discussed her recent motion to vacate the 2012 drug conviction of one Darell Chancellor. Chancellor's conviction allegedly involved a fraudulent search warrant affidavit attested to by Defendant Geelhood. (ECF No. 63, PageID.1230.) Plaintiff asserts that "most" of the fact discovery in this case is complete but states that the Chiefs' depositions and outstanding written discovery may prompt additional discovery from other individuals within the City of Detroit or Wayne County Prosecutor's Office. (*Id.* at PageID.1231.)

On May 12, 2020, Plaintiff filed a supplement to his motion to extend discovery in which he discusses information Defendants recently produced in response to his September 19, 2019, second request for production of documents. (ECF No. 71, PageID.1614.) In this supplement, Plaintiff states that Defendants originally objected to Plaintiff's discovery requests, which sought documents related "in any way to complaints of any kind, including, but not limited to obtaining and/or execution of search warrants, unlawful searches and/or seizures, the collection and/or seizure of evidence" by Defendants Stephen Geelhood or Amy Matelic (ECF No. 68-2, PageID.1412-13.) Despite their initial objections to vagueness, Plaintiff states that on May 4, 2020—after the close of discovery—Defendants produced documents showing that Internal Affairs opened an investigation into Defendant Matelic for falsifying a search warrant affidavit executed by members assigned to Narcotics Unit, including Defendant Geelhood, and that Defendant Matelic was terminated for giving false testimony. (ECF No. 71, PageID.1614.) Additionally, Plaintiff asserts that on April 30, 2020, Defendants "produced other discovery documents indicating that, contrary to Defendants' previous

denials, Defendant Geelhood is, in fact, the subject of an internal investigation by the City of Detroit." (ECF No. 71, PageID.1615.)

In their response, Defendants agree to extend discovery to allow Plaintiff to depose Chief Godbee and Chief Craig but argue that no other discovery should be permitted because Plaintiff "has essentially slept on his discovery rights, deposing only three of the eight named defendants." (ECF No. 67, PageID.1297.) They argue that Prosecutor Worthy's recent public statement is not relevant to Plaintiff's *Monell* claim and would result in a trial within a trial. (ECF No. 67, PageID.1299.)

Defendants also filed a supplemental brief addressing the allegations raised in Plaintiff's supplement. They classify Plaintiff's supplemental brief as a "last-ditch effort to create the appearance of discovery malfeasance." (ECF No. 73, PageID.1625.) Defendants assert that Plaintiff has known about investigations against Defendant Matelic for years. (ECF No. 73, PageID.1626.) They point to a 2015 Detroit Metro Times article discussing fraudulent warrant allegations against Defendant Matelic which quotes Plaintiff's counsel (ECF No. 73-3, PageID.1644) and a September 2019 motion to compel filed by Plaintiff's counsel in another case which discusses in depth the allegations against Matelic. (ECF No. 73-6, PageID.1675–80.) Defendants contend that despite this knowledge, Plaintiff never sought to depose Matelic.

As to Plaintiff's assertion that recently provided documents demonstrate that Defendant Geelhood was also subject to an internal affairs investigation, Defendants do not dispute that they provided Plaintiff with this information after the close of discovery. Instead, they argue the email from DPD Investigator Timothy Ewald on which Plaintiff relies in support of this assertion, and in which Ewald states that Geelhood is under

15

investigation, is inaccurate. (ECF No. 73, PageID.1628.) Defendants proffer that if asked to testify, Internal Affairs Director Christopher Graveline "will confirm that Internal Affairs was not investigating Geelhood in June of 2019" and that the release of Darell Chancellor (the individual discussed in Prosecutor Worthy's recent statement) occurred after an investigation by the Conviction Integrity Unit, not Internal Affairs. (*Id.*)

In consideration of the facts presented in the parties' brief and the relevant legal standard, the court is persuaded that Plaintiff has demonstrated good cause for a discovery extension in some respects. The court endorses an extension, to which Defendants agree, to depose Chiefs Godbee and Craig. An extension to depose SOI #2149 is mooted by the court's denial of Plaintiff's motion to compel. Finally, the court is persuaded that Plaintiff has demonstrated good cause to conduct further discovery into allegations of fraudulent affidavits prepared by Defendant Geelhood based on the Ewald email, particularly given Defendants' apparent submission of this requested information after the close of discovery. On this point, the court also considers the generous standard for discovery permitted by Federal Rule 26(b)(1) into relevant, non-privileged information as compared to the more rigorous inquiry needed, as described above, to justify the disclosure of confidential sources. Fed. R. Civ. P. 26(b)(1); *Fears v. Kasich* 845 F.3d 231, 236 (6th Cir. 2016) ("Parties may seek discovery of any relevant, non-privileged information."); *infra* Part III.A.

The amended complaint contains a *Monell* municipal liability claim against the City of Detroit based on the City's alleged policy or practice of its officers obtaining warrants without probable cause or based on falsely sworn affidavits. (ECF No. 43, PageID.647–48.) To succeed on such a claim, Plaintiff must present proof of "[a] pattern

16

of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Other instances of misconduct involving fraudulent warrant affidavits are relevant for Plaintiff to make this required showing; Plaintiff's *Monell* claim has little chance at surviving summary judgment absent additional, comparable instances of the misconduct alleged. The information contained in the parties' supplemental briefs, specifically the statement of DPD Investigator Timothy Ewald suggesting that Geelhood was subject to an investigation involving false affidavits, presents a credible, factual dispute deserving of limited, further inquiry. However, the court is not persuaded that Plaintiff has diligently investigated similar allegations against Defendant Metalic, especially considering that counsel knew of such allegations as early as 2015. The court will not authorize any further discovery into the allegations against Defendant Metalic. *See Smith,* 595 F. App'x at 478.

The court's decision to allow additional discovery into the circumstances involving alleged fraudulently prepared affidavits by Defendant Geelhood does not give Plaintiff carte blanche to indefinitely extend discovery. Rather, the court will allow Plaintiff to conduct additional, limited discovery in the form of no more than ten targeted interrogatories. If, as Defendants suggest, no investigation has been conducted against Geelhood, Defendants' responses will be short, and Plaintiff's inquiry in that regard will end.

In sum, the court will grant in part Plaintiff's motion to extend discovery. The court will extend discovery by 60 days to allow Plaintiff to depose Chief Godbee and Chief Craig. Additionally, the court will permit Plaintiff to serve Defendants with no more than ten targeted interrogatories related to the allegations of fraudulently prepared affidavits

and Internal Affairs investigations against Defendant Geelhood. Once served, Defendants will have 14 days to respond to Plaintiff's interrogatories.

## IV. CONCLUSION

For the reasons explained above, the court will deny Plaintiff's motion to compel because it concludes that Plaintiff has failed to make a preliminary showing of falsity within the warrant affidavit or that disclosure is justified under the *Roviaro* balancing standard. The court is persuaded that an extension of the discovery deadline is appropriate to allow Plaintiff time to depose Chief Godbee and Chief Craig. Additionally, Plaintiff will be permitted to serve Defendants with no more than ten, targeted interrogatories related to investigations and allegations of fraudulent affidavits against Defendant Geelhood. Additional discovery outside of this limited scope will not be permitted during this extension.

Given the court's ruling to extend discovery, it appears that Defendants' motion for summary judgment is premature. For the purpose of docket clarity, the court will deny the motion without prejudice and allow Defendants to refile, or to file a new motion if necessary, within 30 days after the close of the extended period of discovery. The court makes no findings as to the merits of Defendants' motion for summary judgment or Defendants' motion to strike Plaintiff's expert testimony. Accordingly,

IT IS ORDERED that Plaintiff's motion to compel (ECF No. 57) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion to extend discovery (ECF No. 63) is GRANTED IN PART. Discovery is hereby extended until **August 3, 2020** and is limited in scope by the terms described in this order. The dispositive motion deadline is extended until **September 2, 2020**.

IT IS FURTHER ORDERED that Defendants' motion to file a sur-reply (ECF No. 64) is GRANTED.

Finally, IT IS ORDERED that Defendants' motion for summary judgment (ECF No. 70) is DENIED WITHOUT PREJUDICE.

        s/ Robert H. Cleland     /
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: June 4, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 4, 2020, by electronic and/or ordinary mail.

        s/ Lisa Wagner     /
        Case Manager and Deputy Clerk
        (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C1 ORDERS\18-13781.FRONTCZAK.compel.extend.discovery.surreply.HEK.2.RHC.docx