**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

NICK FRONTCZAK, as the Public
Administrator for the Estate of MICHAEL
McSHANE, deceased,

                Plaintiff,

v.                                              Case No. 18-13781

CITY OF DETROIT, et al.,

                Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT**

On March 20, 2014, Defendants, all members of the Detroit Police Department's

(DPD) narcotics unit, searched Plaintiff's[1] home pursuant to a search warrant supported

by the affidavit of Defendant Officer Matthew Bray. In his affidavit, Bray incorporates

information obtained from a confidential source registered with the City of Detroit as

Source of Information ("SOI") #2149. Plaintiff filed a three-count amended complaint

related to this search, containing claims for illegal search and seizure, municipal liability,

and civil conspiracy. The crux of Plaintiff's illegal search claim turns on whether

Defendants possessed probable cause to obtain a search warrant. Plaintiff asserts that

they did not, alleging that Bray's affidavit contained materially false information. The

Defendants have now filed three motions that collectively seek summary judgment on

_____

[1] The court uses "Plaintiff" to refer to Nick Frontczak acting as the Public Administrator
for the Estate of the deceased named Plaintiff Michael McShane.

all counts in Plaintiff's complaint. (*See* ECF Nos. 84, 85, 110.) The court finds a hearing unnecessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons provided below, the court will grant Defendants' three motions for summary judgment.

## I. BACKGROUND

### A. Facts

On March 20, 2014, Defendants, Detroit Police Officers Mathew Bray, Gregory Tourville, Reginald Beasley, Larry Barnett, and Amy Matelic, searched Plaintiff's home located at 1556 W. Troy in Ferndale, Michigan, pursuant to a search warrant and under the supervision of Defendant Sgt. Steven Geelhood. (ECF No. 84, PageID.2416; ECF No. 87, PageID.3089.) The search warrant was based on the affidavit of Defendant Bray, which alleged the following facts:

> The Affiant is working in conjunction with other members and SOI #2149. SOI #2149 has been used by members of the Narcotics Division on over one hundred (100) occasions, resulting in the arrests of over one hundred (100) persons for narcotic and related offenses, SOI #2149 has provided credible and reliable information in the past that has yielded significant quantities of Marijuana, heroin and cocaine.
>
> On March 19th, 2014 affiant met with SOI #2149. The SOI was searched for drugs and money, with none being found. The SOI was issued a quantity of Detroit Police Funds and instructed to attempt a purchase of illicit drugs at 1556, W. Troy. The SOI was then observed to go directly to front of target location and met up with seller. Seller and SOI went up into target location. The SOI returned a brief moment later (less th[a]n two minutes) and turned over a quantity of suspected marijuana stating that it was purchased from the SELLER at the target location. The SOI was again searched for drugs and money, with none being found. The suspected marijuana was transported to Narcotics Division Offices for analysis by P.O. Johnson #4011 and placed in LSF# N05216311. The test proved positive for marijuana.

(ECF No. 57-2, PageID.769.)

Bray testified that his attention was first drawn to the house at 1556 West Troy by a confidential informant, who told him that someone living at the address was conducting street-level marijuana sales out of the premise. (ECF No. 84, PageID.2416.) According to Bray, without the assistance of other members of the narcotics crew, he organized and observed a controlled buy of marijuana at the house on March 19, 2020, using Source of Information #2149 (a paid confidential source) that had proven to be reliable in the past. (*Id.*) On March 20, 2014, Judge Lyndia Nance-Adams authorized a search warrant for 1556 West Troy St. after Bray submitted the above-excerpted affidavit.

The deposition testimony of the now-deceased Plaintiff, Michael McShane, directly contests key pieces of this affidavit. While McShane admitted to growing a large quantity of marijuana in his home, Plaintiff states that he did so legally under Michigan's Medical Marihuana Act, Mich. Comp. Laws Ann. § 333.26421, to provide for five patients for whom he allegedly served as a "caregiver" under the Act.[2] McShane, however completely denied ever selling drugs to SOI #2149 on March 19, 2014. (*See* ECF No. 89-3, PageID.3204 ("I did not have some kind of drive-through window that somebody could get marijuana and be on their way in two minutes . . . I wasn't selling marijuana to anybody that was outside my prescribed range of people that I could from the State of Michigan and the Marijuana Act. So no, it did not happen.").)

---

[2]   Defendants, by contrast, point out that during discovery McShane was able to produce medical marijuana "cards" for only two individuals. (*See* ECF No. 84-2, PageID.2489 (McShane testifying that he had cards for five individuals but when he looked for the cards and could not find them).) Defendants infer that Plaintiff was not complying with the twelve plants per "registered qualifying patient" limit contained in Michigan's Medical Marihuana Act. *See* Mich. Comp. Laws Ann. § 333.26424.

At approximately 1:15 p.m. on March 20, 2014, with Sgt. Steven Geelhood supervising, officers Mathew Bray, Gregory Tourville, Reginald Beasley, Larry Barnett, and Amy Matelic executed the search warrant. (*Id.*, PageID.2417.) The officers found McShane in the basement and his roommate upstairs in the home. Both were temporarily detained. (*Id.*, PageID.2418.) McShane was ordered to the ground and was let up after "a couple of minutes." (ECF No. 89-3, PageID.3205) (McShane testified that he was pushed to the floor with an "MP5 machine gun" pointed at the back of his head, an allegation immaterial to the innate legitimacy of the warrant which in any event the Defendants dispute.) (*See Id.*) McShane did not seek any medical treatment for any alleged injuries following the raid, and he stated that the officers left within forty-five minutes. (*Id.*, PageID.3206.) He was not taken into custody more than the noted brief detention, and was never charged with a crime.

It is undisputed that during the raid the officers seized fifty marijuana plants in different stages of growth, "several pounds" of wet unfinished marijuana, and a smaller quantity of processed marijuana. (ECF No. 84, PageID.2420; ECF No. 89-3, PageID.3203.) The officers also seized $914 in cash that was found in the home. (ECF No. 84, PageID.2420.) The evidence from the raid was placed into sealed evidence bags—some of which were sent to the Michigan State Police crime lab for testing. (*Id.*) The seized cash was later returned to McShane by the Wayne County Prosecutor's office after it declined to pursue forfeiture proceedings. (ECF No. 84-23, PageID.2574.)

Plaintiff contends that he was targeted for such a raid without probable cause as part of a larger pattern of such unlawful raids by the DPD Narcotics, a unit that was later disbanded. He argues that evidence exposed during other criminal and civil lawsuits

4

shows that the DPD narcotics officers in question "were conducting unlawful raids for their own pecuniary gain." (ECF No. 87, PageID.3098.)

## B. Procedural History

The instant 42 U.S.C. § 1983 action arose as one of five cases from a failed class action lawsuit against the City of Detroit and individual officers that was denied class certification.[3] *Davis v. City of Detroit*, No. 15-10547, 2018 U.S. Dist. LEXIS 149351, 2018 WL 4179316 (E.D. Mich. Aug. 31, 2018) (Borman, J.). The present action was filed on December 6, 2018. (ECF No. 1.) Plaintiff filed an amended complaint on October 16, 2019. (ECF No. 43.) While Michael Valentino, McShane's housemate, was also a Plaintiff in the present action, he was later dismissed with prejudice after he repeatedly failed to appear for his deposition. (ECF No. 53.)

Plaintiff's Amended Complaint contains three enumerated counts. (*See* ECF No. 43.) Count I alleges a violation of Plaintiff's Fourth Amendment rights because his "arrest and detention . . . were undertaken by Defendants without probable cause and without regard to any legitimate law enforcement interest." (*Id.*, PageID.645-46.) Count II is a *Monell* claim against Defendant City of Detroit for "inadequate training and/or supervision" of Defendant officers who at the time worked in DPD's Narcotics Unit. (*Id.*, PageID.646-47.) Count III alleges that the Defendant officers "[o]perat[ed] under a common plan to violate Plaintiffs' constitutional rights (i.e., by unlawfully searching and seizing Plaintiffs), [which each of the individual Defendants] actively participated in and provided substantial assistance." (*Id.*, PageID.649.)

---

[3]      In addition to the instant case, these lawsuits include: *Reid v. City of Detroit, et al.*, No. 18-13681; *Lockard v. City of Detroit, et al.*, 18-13045; *Gardella v. City of Detroit, et al.*, No. 18-13687; and *Metris-Shamoon v. City of Detroit, et al.*, No. 18-13683.

## II. STANDARD

To prevail on a motion for summary judgment, a movant must show—point out—that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

### III. DISCUSSION

### A. Excessive Force Claim

In his Amended Complaint, Plaintiff brings a claim in Count I for "Violation of the Fourth Amendment." (ECF No. 43, PageID.465-46.) The allegations contained in this claim indicate that the claim is for "unlawful and unreasonable search and seizure" (Id. at ¶ 34), and that Plaintiff's "arrest and detention . . . were undertaken by Defendants without probable cause." (*Id.* at ¶ 37.) Plaintiff's summary judgment briefing now suggests that excessive force may have been used during the raid. (*See* ECF No. 87, PageID.3126-37 (citing McShane's testimony that he was thrown to the ground while officers put a gun to the back of his head).) But the words "excessive force" do not appear in the current version of the complaint. Nor do the words "excessive force" appear in the complaint filed in the failed *Davis* class action. *See Davis v. City of Detroit,* Case No. 15-cv-10547, ECF No. 23.

Defendants argue, in a joint motion for summary judgment, that both Plaintiff's implicit excessive force claim and explicit "conspiracy/concert of action" claim are time barred because they were not asserted in the original *Davis* class action nor were the claims asserted in the present suit before the applicable statute of limitations had run.[4] (ECF No. 110, PageID.4491.) Defendants concede that "*American Pipe* tolling suspended the applicable statute of limitations as to all asserted members of the [Davis]

---

[4]     Both parties seem to agree (correctly) that Michigan's three-year statute of limitations for personal injury actions, Mich. Comp. Laws. § 600.5805(10), applies to Plaintiff's section 1983 civil rights claims absent tolling. *See Wilson v. Garcia*, 471 U.S. 261, 276-280 (1985); *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988); *Drake v. City of Detroit*, 266 F. App'x 444, 448 (6th Cir. 2008) (specifically citing Mich. Comp. Laws § 600.5805(10)).

class (like [Plaintiff]) who would have been parties had the suit been permitted to continue as a class action." (*Id.*, PageID.4493 (citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974).) But they point out that "'[t]he tolling rule of *American Pipe* . . . should not be read . . . as leaving a plaintiff free to raise different or peripheral claims following denial of class status.'" (*Id.* (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (Powell, J. concurring)).) Therefore, Defendants contend that *American Pipe* tolling only preserved Plaintiff's "claims of unlawful search and seizure and deprivation of property without due process." (*Id.*)

In response, Plaintiff contends that a claim of excessive force is subsumed within his unlawful search and seizure Fourth Amendment claim that focuses on the search warrant affidavit. (*See* ECF No. 113, PageID.4658-59 ("Plaintiff isn't attempting to raise a 'new' or different claim that wasn't set forth in *Davis*: both actions assert the same Fourth Amendment claims based on an unreasonable seizure.").) The plaintiffs in *Lockard v. City of Detroit et al.*, another Fourth Amendment complaint spun off from the failed *Davis* class action, made an almost identical argument, and the district court presented a detailed analysis explaining why *American Pipe* tolling did not apply to a similar excessive force claim. The court provided the following analysis in *Lockard*:

> [T]he Court finds that because a claim for excessive force in this case arises out of a different factual and legal nexus than the claim upon which the *Davis* class action was based (unlawful search and seizure without probable cause), the claim for excessive force does not benefit from *American Pipe* tolling and is barred by the statute of limitations.
> The *Davis* class action plaintiffs' proposed class identified putative class members, tied to the lack of probable cause in search warrants. (*Davis v. City of Detroit*, 15-10547, Mot. for Class Cert., ECF No. 111-4 PageID.4142-43.) There was no specific claim for excessive force in the Davis complaint, and nothing to suggest excessive force was a basis for class certification.
> An unlawful search and seizure based on a lack of probable cause is

conceptually and legally different than a claim for excessive force. *See e.g., Nails v. Riggs*, 195 F. App'x 303, 313–14 (6th Cir. 2006) ("The issues of whether there was probable cause to arrest and whether excessive force was used are distinct."); *Humphrey v. Mabry*, 482 F.3d 840, 849 (6th Cir. 2007) (treating the unlawful seizure claim as based on whether the warrantless arrest was based on reasonable suspicion, and analyzing the claim for excessive force separately); *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007) (regarding claims of unlawful arrest and excessive force, the court noted that, "[t]hese two inquiries are separate and independent, though the evidence may overlap.").

. . .

Similarly to [*Currithers v. FedEx Ground Package Sys., Inc.*], where tolling on the fraud claim "ended when it was excluded from plaintiffs' motion for class certification," so too here, an excessive force claim was not included in the *Davis* class action complaint, nor in the motion for class certification. 2012 WL 458466, at *8 (E.D. Mich. Feb. 13, 2012). Nor is it specifically brought in [the Plaintiffs'] instant complaint. Thus, Plaintiffs' attempt to add a claim of excessive force, does not benefit from *American Pipe* tolling, and is time barred.

*Lockard v. City of Detroit*, No. 18-13045, 2021 WL 3883263, at *3-*4 (E.D. Mich. Aug 31, 2021) (Borman, J.). The court sees no reason to depart from the tolling analysis in *Lockard*. The court holds that Plaintiff in the present action cannot raise a claim for excessive force during the execution of the search warrant because the claim was not asserted in the *Davis* class action, so the statute of limitations for such a claim had already run by the time the present action was filed in December 2018. *See id.*

## B. Conspiracy/Concert of Action Claim

Likewise, the court finds that Plaintiff's "conspiracy/concert of action" claim is barred by the statute of limitations. Plaintiff admits "that the *Davis* Complaint does [not] include a count entitled 'Concert of action/conspiracy,' however [he contends] the *Davis* Complaint does allege that Defendants were 'jointly and severally' liable." [5] (ECF No.

---

[5]     Neither 42 U.S.C.1983 nor Michigan law allow a plaintiff to pursue a "joint and servable" liability theory for such a claim. *See Smith v. Michigan*, 256 F. Supp. 2d 704, 712 (E.D. Mich. 2003) (holding both that "there is no joint and several liability under 42

113, PageID.4650 ¶14.) Other than this single sentence, Plaintiff does not attempt to argue in support of the conspiracy claim. Therefore, given Plaintiff's concession that the claim was not included in the failed *Davis* class action, the court concludes that the conspiracy count is also barred by the statute of limitations.

Even if, *arguendo*, the court assumes the conspiracy claim is not barred by the statute of limitations, since all the individual Defendants were employees of the City of Detroit when the raid took place, Plaintiff's conspiracy claim would fail under the intracorporate conspiracy doctrine. The "doctrine . . . states that if 'all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019), *cert. denied sub nom* (quoting *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994).) In *Jackson*, the Sixth Circuit found that the intracorporate conspiracy doctrine applies to claims brought under either §1983 or §1985 "where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights." *Id.* at 818. And "an employee's actions may be within the scope of his or her employment even if the actions constitute intentional torts." *Arbour v. Jenkins*, 903 F.2d 416, 422 (6th Cir. 1990). *See, e.g.*, *Raudabaugh v. Baley*, 133 Mich. App. 242, 350 N.W.2d 242 (1983) (false arrest); *Ray v. City of Detroit*, 67 Mich. App. 702, 242 N.W.2d

---

U.S.C. § 1983 . . . [as a] 1983 [claim] requires a showing of responsibility for personal wrongdoing" and "MCL 600.2956 provides that in tort actions seeking damages for personal injury, property damage, or wrongful death, liability of each defendant for damages is several only, and not joint.") (Roberts, J.).

494 (1976) (holding city liable for intentional tortious conduct by a city employee). Because Plaintiff has presented no evidence, and does not even allege, that Defendant officers were acting outside of the scope of their employment when they obtained the warrant and conducted a raid on his Ferndale home, his conspiracy claim also fails as a matter of law.

### C. Unlawful Search and Seizure

#### i. Mathew Bray

The heart of Plaintiff's case is Plaintiff's allegation that he was subject to an unreasonable search and seizure due to Defendant Bray's alleged decision to falsify a warrant application.

Defendant Bray, like all the Defendant officers in the present case, argues that Plaintiff's Fourth Amendment claim is barred by qualified immunity. To "shield officials from harassment, distraction, and liability when they perform their duties reasonably," courts have devised a two-part test to protect government officials from civil litigation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Courts consider: "(1) whether the alleged facts, viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right, and (2) whether that constitutional right was clearly established." *Rieves v. Town of Smyrna,* 959 F.3d 678, 695 (6th Cir. 2020). "A right is clearly established when a reasonable officer would know—in the given situation and with the information known to him at the time—that his conduct violated that right." *Id.* Stated another way, "[i]f reasonable officials could disagree as to whether the conduct at issue was lawful, then qualified immunity applies." *Id.*

11

The Fourth Amendment protects individuals from search or arrest without probable cause. *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 564 (1971); *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004). An individual may bring an action under § 1983 for an unlawful search or false arrest when "the officer lacked probable cause" for his actions.[6] *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005).

However, "an officer . . . cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003); *see also Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989) (tying the standard to the legal principle that "[p]olice officers are entitled to rely on a judicially secured warrant . . . unless [it] is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable"). In cases where a police officer provided false information to obtain a warrant, the Sixth Circuit has devised a two-part test to determine if a plaintiff can bring a claim despite qualified immunity and despite the existence of a facially valid warrant. "To overcome an

---

[6]     It is "clearly established" that a police officer cannot purposefully make a materially false statement in securing a warrant. *Rieves v. Town of Smyrna, Tennessee,* 959 F.3d 678, 695 (6th Cir. 2020). The Sixth Circuit has explicitly stated that "[a] reasonable police officer would know that fabricating probable cause, thereby effectuating a seizure, would violate a suspect's clearly established Fourth Amendment right to be free from unreasonable seizures." *Webb v. United States*, 789 F.3d 647, 667 (6th Cir. 2015) (quoting *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999)). The law is not unclear; a reasonable officer in Defendant Bray's position would have known that submitting false information for warrant approval deliberately or with reckless indifference is illegal. *Rieves,* 959 F.3d at 695. Since this prong is satisfied, Defendant Bray would not be entitled to qualified immunity if he indeed intentionally, or with reckless disregard for the truth, presented information on the warrant application regarding a drug sale to an SOI that was false.

officer's entitlement to qualified immunity . . . a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Vakilian*, 335 F.3d at 517.

The standard is derived from the Supreme Court's decision in the analogous setting of motions to suppress in *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). The *Franks* court emphasized that "[a]llegations of negligence or innocent mistake are insufficient" to claim false arrest. *Id.* The Sixth Circuit has since reiterated that even in the posture of a summary judgment motion, a plaintiff asserting an unlawful search or false arrest claim must make a "substantial" showing of deliberateness or reckless disregard. *Butler v. City of Detroit*, 936 F.3d 410, 418 (6th Cir. 2019); *accord Bullock v. City of Detroit,* 814 F. App'x 945, 951 (6th Cir. 2020). It is a "demanding standard" established with "the recognition that a police officer swearing out an affidavit can make mistakes and yet remain protected by qualified immunity." *Butler*, 936 F.3d at 418. The Sixth Circuit has also described this test as distinct from traditional summary judgment analysis. "Whether [a plaintiff] makes [a substantial preliminary showing of intentionality] is *a question of law for the court*." *Newell v. Wayne Cnty.*, 733 F. App'x 286, 290 (6th Cir. 2018) (emphasis added); *see also Hale v. Kart*, 396 F.3d 721, 726-27 (6th Cir. 2005) ("[The court's] inquiry is whether the plaintiff made a strong preliminary showing that the affiant intended to mislead the judge by omitting information from the affidavit. Only then can we address the question of whether a factual matter related to probable cause exists that would preclude summary judgment.").

13

In the analogous *Franks* context, the Sixth Circuit has held that "reckless conduct is not measured by a reasonably prudent man standard . . . [t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of the statements." *United States v. Cican*, 63 F. App'x 832, 835 (6th Cir. 2003); *accord United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). "In almost all cases, subjective recklessness must be proven circumstantially." *Cican*, 63 F. App'x at 837.

Plaintiff attempts to distinguish these binding precedents by arguing that a Plaintiff challenging a search warrant is *only* required to make "a substantial preliminary showing of falsity" in cases where an officer is accused of misleading a judge "*by omitting information from the affidavit*." (ECF No. 87, PageID.3108 (citing *Hale,* 396 F.3d at 721).) Plaintiff argues that because his "instant claims do not involve a claim that [Defendant] Bray omitted exculpatory (*Brady*) facts from his affidavits, but rather that he fabricated, entirely, the events of his search warrant" that he is not required to make such a heightened preliminary evidentiary showing under the test articulated in *Vakilian*. (*Id.*)

A recent published Sixth Circuit decision, however, demonstrates that Plaintiff's purported distinction is merely an artifice. In *Butler v. City of Detroit*, 936 F.3d 410, 415-16 (6th Cir. 2019), a police officer submitted an affidavit to obtain a search warrant of the plaintiff's home. The officer stated that a knowledgeable informant had been at plaintiff's address "numerous times," including "within the last twenty-four hours," and that "large amounts of narcotics and US currency" were stored at plaintiff's house. *Id.* at 414. The officer continued and asserted that he had personally observed vehicles linked

to violent drug dealers parked at Plaintiff's residence; the officer stated explicitly that he repeatedly saw a drug dealer go to Plaintiff's house and, at one point, carry in a "brown bag." *Id.* at 415. The officer even claimed to observe a controlled heroin purchase at the plaintiff's residence. *Id.* at 416. All these statements proved false, yet police conducted the search, applied force against a "cooperative" plaintiff, and seized plaintiff's property, including $5,000 in cash that the plaintiff alleged was never returned. *Id.* The district court denied qualified immunity for the officer making false statements to obtain a warrant. *Id.*

The Sixth Circuit reversed. The court emphasized that even in the summary judgment context, where the officer included objectively false information in the affidavit, "[t]o overcome [qualified] immunity, a plaintiff must present 'substantial' evidence to show a more culpable mindset" on the part of the officer seeking a warrant. *Id.* at 418-422 (citing *Franks*, 438 U.S. at 170; *Vakililan*, 335 F.3d at 517). Even though the officer could have checked the record and confirmed that plaintiff's house had no connection to illegal narcotics (there were basic logical inconsistencies regarding the location of the plaintiff's house compared to the alleged drug dealers), and despite the officer's explicit and false statements that he personally observed transactions occurring at the plaintiff's residence, the court held that evidence of the officer writing the wrong house "tells [the court] nothing about [the officer's] mental state." *Id.* at 419. Even though the officer later "freely acknowledge[d]" that the report contained false information, the plaintiff's failure to provide a substantial preliminary showing that the officer was not only negligent (by confusing houses) but acted with "recklessness or willfulness" was fatal to the plaintiff's claim at the summary judgment stage. *Id.* at 422. Merely showing the officer's

statements were false is "not . . . enough to deny [him] qualified immunity." *Id.* at 419. In addition to articulating the significant mental state requirements for such a claim, *Butler* clearly demonstrates that Plaintiff is incorrect and that the heightened "substantial preliminary showing" standard from *Vakililan* applies to allegations that a warrant application contained materially false statements. *See Franks*, 438 U.S. at 155-56.

The crux of Plaintiff's argument is that Defendant Matthew Bray intentionally made false statements, or completely fabricated, the contents of the warrant affidavit, which indicated that a registered informant bought marijuana at Plaintiff's Ferndale home while Defendant Bray observed. The false information was allegedly material; without it, according to Plaintiff, there was no probable cause to search his home. *Vakilian*, 335 F.3d at 517.

The warrant to search Plaintiff's home was facially valid. *Voyticky*, 412 F.3d at 677; *Jones v. Clark Cnty.*, 959 F.3d 748, 756-57 (6th Cir. 2020) (quotation removed) ("[Probable cause exists] when . . . the facts and circumstances [derived from] reasonably trustworthy information are sufficient to warrant a prudent man in believing that the [suspect] had committed . . . an offense."). Defendant Bray's request included a detailed report regarding a controlled buy of marijuana from McShane at his home. (ECF No. 57-2, PageID.769.) It stated the SOI was quickly able to purchase marijuana from Plaintiff at his home, that Defendant Bray observed the SOI entering and leaving the home, and that the purchased drugs were immediately sent to a lab for testing and verification. (*Id.*)

Thus, there is a presumption of probable cause. *Voyticky*, 412 F.3d at 677. To defeat Defendant Bray's qualified immunity, Plaintiff must make a "substantial showing"

16

and demonstrate a genuine dispute of fact that "[Defendant Bray] stated a deliberate falsehood or showed reckless disregard for the truth." Fed. R. Civ. P. 56(a); *Butler*, 936 F.3d at 418; *Vakilian*, 335 F.3d at 517. Whether Plaintiff makes this initial showing is a question of law for the court. *See Hale v. Kart*, 396 F.3d at 726-27.

Plaintiff now points to three pieces of evidence he suggests, that when combined, make a substantial showing that Defendant Bray's search warrant application was false. First, he cites McShane's deposition testimony that he did not sell marijuana to SOI #2149 on March 19, 2014. (*See* ECF No. 89-3, PageID.3204 ("I did not have some kind of drive-through window that somebody could get marijuana and be on their way in two minutes . . . I wasn't selling marijuana to anybody that was outside my prescribed range of people that I could from the State of Michigan and the Marijuana Act. So no, it did not happen.").)

Second, Plaintiff points out that despite officer Bray's testimony that he filled out a payment voucher to compensate SOI #2149 that the Defendant City "is unable to produce any such voucher as should be kept according to its policies" and that Bray has not produced any surveillance notes. (ECF No. 87, PageID.3111.) He contends that "[t]he absence of these documents further support Plaintiff's allegation that Bray's affidavit was falsified." (*Id.*)

Third, Plaintiff contends that because the veracity of Bray's warrant applications in two other cases has been called into question, Bray's credibility has been impugned in the present case. (ECF No. 87, PageID.3114.) Plaintiff cites an order of dismissal from a Michigan criminal case, *People v. Lockard*, 14-010733 (Dec. 4, 2015), where a Wayne County Circuit judge suppressed a search warrant which was based on

17

surveillance conducted by officer Bray. (ECF No. 89-4, PageID.3208-10.) *See also Lockard v. City of Detroit*, No. 18-13045, 2021 U.S. Dist. LEXIS 164495, at *1 (E.D. Mich. Aug. 31, 2021) (active civil lawsuit). At the state court suppression hearing, the criminal defendant presented testimony from his work supervisor indicating that the company's electronic billing/timekeeping system supported the defendant's contention —and the witness's own recollection—that the criminal defendant was in Indianapolis, Indiana, on the day Bray's affidavit attests that Bray had surveilled defendant conducting drug transactions out of his Lincoln Park home. (ECF No. 89-5, PageID.3219, 3225.) After considering this testimony, the state court suppressed the warrant concluding, that "I don't think that the truth was told to the Magistrate [issuing the warrant], and I don't think that the search warrant was based on the truth." (ECF No. 89-5, PageID.3241.) Additionally, Plaintiff cites a complaint filed in *McGee v. City of Detroit*, No. 20-12367, (E.D. Mich. Sept. 1, 2020), ECF No. 1, a recently initiated Section 1983 civil case where Bray is accused of falsifying an affidavit to obtain a search warrant after he had already conducted a warrantless search. A review of the docket in *McGee* shows that discovery only began in August 2021 and no dispositive motions have yet been filed.

Defendants, in response, argue that there is documentary evidence in the factual record that corroborates Defendant Bray's sworn warrant affidavit. Defendants cite the Detroit Policy Activity Report for March 19, 2014 that indicates a control buy occurred at "1556 W. Troy" and lists a "lock seal" evidence folder number for the purchased sample sent to the lab. (*See* ECF No. 84-5, PageID.2508.) The lock seal folder number and sample weight corresponds to a preliminary lab result prepared by officer Brenda

18

Johnson on March 19, 2014, at 5:30 p.m.—indicating that the sample was positive for marijuana. (ECF No. 84-6, PageID.2510.)

Reviewing the evidence presented, the court concludes that Plaintiff has failed to present "a substantial showing that the [Defendant Bray] stated a deliberate falsehood" in his warrant application. *See Vakilian*, 335 F.3d at 517. As this court previously explained, at its core, "Plaintiff's argument proceeds with a form of the fallacy of confirmation bias." *See Frontczak v. City of Detroit*, No. 18-13781, 2020 WL 3000576, at *5 (E.D. Mich. June 4, 2020). The court cannot logically conclude that other unresolved allegations brought against Defendant Bray regarding unrelated warrants mean that there is now "substantial" evidence that the warrant application presently at issue was falsified.[7] While such allegations against Defendant Bray, would likely impeach his credibility as a witness, at least somewhat, such unrelated allegations do little to establish evidentially that the warrant presently at issue was falsified.

"A single controlled purchase is sufficient to establish probable cause to believe that drugs are present at the purchase location." *Bullock v. City of Detroit*, No. 19-1287, 2020 U.S. App. LEXIS 15495, at *3 (6th Cir. May 14, 2020) (quoting *United States v. Archibald*, 685 F.3d 553, 558 (6th Cir. 2012)). After reviewing the warrant application, the court finds no internal inconsistencies and finds that it is corroborated by the narcotics unit's DPD activities log and the testing lab's records. And as the court previously indicated, it assigned limited if any weight to the absence of a payment

---

[7]     Nor can the court logically conclude that the conviction of three members of a seventy-to-eighty officer narcotics unit for falsifying affidavits, among other offenses, leads inevitably to the conclusion that all other warrants sought by DPD's narcotics unit as a whole are also fraudulent, as Plaintiff seems to contend.

voucher when discovery and document production was conducted over three years after the raid in question and occurred within a criminal case that never resulted in charges.

Further, the results of the search in this case—producing the materials sought in the warrant—lend at least some further support to the validity of the affidavit. In a criminal context, the result of a search is not proof of pre-existing probable cause, nor dispositive of the warrant's validity. "Probable cause must exist when a warrant is issued." *United States v. Jeanetta*, 533 F.3d 651, 655 (8th Cir. 2008). However, in a civil context as here, the results may be of some probative value as to the possible relevance or significance of an SOI's information. As the court explained in *Hunt*:

> While it may be true, from a technical standpoint, that the results of the search of Plaintiffs' premises, coming up empty as they did, do not, with legal necessity and logical compulsion, reflect back on the legal sufficiency of the Affidavit for Search Warrant, the results of the search nonetheless, as a practical matter, do give rise to questions regarding the viability of the factual basis of the information that was averred in the Affidavit and, in turn, to concerns about which the deposition testimony of the CI could prove useful. In this regard, Defendants would seem to want this Court to dismiss the significance of the fact that the raid came up empty handed. Certainly, it is fair to suggest that had the raid produced different results (e.g., cocaine, crack and related tools of the trade) it is unlikely that Plaintiffs would be bringing the instant action.

*Hunt*, 2012 WL 262609, at *10.

Here, the search of Plaintiff's residence produced the contraband predicted by the warrant affidavit. As explained by the court in *Hunt*, the success of the search lends at least some further support to the factual basis of the warrant. *In toto*, the court finds that Plaintiff has failed to make the required "substantial showing" of evidence indicating that Bray presented false information in the search warrant application. Therefore, Bray is entitled to qualified immunity.

### ii. Officers Tourville, Beasley, Barnett, Matelic, and Sgt. Geelhood

It is undisputed that Defendants Tourville, Beasley, Barnet, and Matelic executed a facially-valid and judicially authorized warrant when they searched the Plaintiff's home in March 2014. (ECF No. 87, PageID.3091.) It is also undisputed that Defendant officers Tourville, Beasley, Barnett, Matelic, and Sgt. Geelhood did not participate in obtaining the warrant, which was done by Defendant Bray alone. (*Id.*, PageID.3092.) The parties disagree, however, on whether the executing officers can still be held liable for the allegedly fraudulent search warrant application despite not participating in the warrant's preparation.

Plaintiff cites *McCallum v. Geelhood*, 742 F. App'x. 985 (6th Cir. 2018), in support of the proposition that officers executing a warrant should be denied qualified immunity "where there was a question of fact as to whether [the executing officers] acted with requisite knowledge and intent to share liability for the execution of an invalid search warrant." (ECF No. 87, PageID.3116.)

But the officers assert that they are entitled to qualified immunity because they were permitted to reasonably rely on a judicially-authorized search warrant. *See Hale,* 396 F.3d at 725 ("In § 1983 actions, an officer ordinarily received qualified immunity if he or she relies on a judicially secured warrant," so long as the warrant was not "so lacking in the indicia of probable cause" that reliance on the warrant would be unreasonable.).

First, this dispute is moot in light of the court's ruling that Defendant Bray must be granted summary judgment on Plaintiff's warrant falsification allegation. If Plaintiff has failed to show there is a genuine dispute regarding the warrant's validity, he cannot

succeed in his claim that executing officers are not entitled to qualified immunity for relying on it. *See id.*

Even if, *arguendo*, Plaintiff had been able to demonstrate with a substantial showing that a genuine factual dispute exists as to the warrant's validity, Plaintiff has failed to present any material evidence demonstrating that the officers *knew* the warrant was based on false information. The *Geelhood* case cited by Plaintiff—which involves both Defendants Geelhood and Matelic—is factually distinguishable from the present case. A recent decision in *Reid v. City of Detroit*, another spin-off case from the failed *Davis* class action addressed the same argument that Plaintiff now raises.

> In *McCallum*, a search warrant was obtained and executed at the plaintiff's property. The plaintiff filed a § 1983 action alleging, among other things, that Officer Matelic submitted an affidavit in support of the search warrant that contained false and misleading statements, and that Matelic made those statements deliberately or with reckless disregard for the truth. Notably, Matelic admitted "that she never actually received information from the informant described in her affidavit and never even knew the informant's identity." 742 F. App'x. at 987. Matelic stated that Officer "Geelhood provided her with all of the information related to the confidential informant." *Id.* The district court denied qualified immunity to both Matelic and Geelhood, and found that the following disputed issue would proceed to trial: "Whether Geelhood, in his review of Matelic's submission of the search warrant affidavit, acted with the requisite knowledge and intent to share liability for the execution of the invalid search warrant." *Id.* at 989. The Sixth Circuit affirmed the district court's denial of qualified immunity.

> Unlike the situation presented in *McCallum*, the only allegation, and the only evidence presented to the Court, is that Leavells alone obtained the search warrant at issue in this case and that he drafted and signed the supporting search warrant affidavit. Plaintiff has not presented any evidence that could create a genuine issue of fact as to whether any of these four officers . . . had any involvement in procuring the search warrant.

*Reid v. City of Detroit*, 18-cv-13681, 2020 WL 7056030, at *9, *10 (E.D. Mich. Dec. 2, 2020). Like *Reid*, Plaintiff in this action has presented no material evidence that the five other Defendants conducting the raid had knowledge of the search warrant's alleged

falsity. Plaintiff has presented mere speculation to support his claims, based on unproven allegations raised against officers in other civil actions, and the actions of other non-party DPD officers. Plaintiff has provided no evidence about the officer's knowledge in *this* case. Therefore, officers Tourville, Beasley, Barnett, Matelic, and Sgt. Geelhood will also be granted qualified immunity as to the wrongful search claim.

### D. Fourth Amendment Wrongful Seizure Claim

Plaintiff argues that "the record also supports Plaintiff's claim that he was unlawfully seized within the meaning of the Fourth Amendment."[8] (ECF No. 87, PageID.3126.) "The Fourth Amendment protects against unreasonable seizures, including seizures that involve only a brief detention short of traditional arrest." *Al-Lamadani v. Lang*, 624 F. App'x 405, 410 (6th Cir. 2015) (quotation marks and citation omitted). So, Plaintiff is correct that McShane was technically "seized" during the raid. However, "the Supreme Court [has] found that a limited intrusion [on a person's liberty] was reasonable when the police temporarily restrained a person, absent probable

---

[8] Plaintiff argues, in the alternative, that Defendants' alleged failure to "knock and announce" when executing the warrant also constituted a constitutional violation. (ECF No. 87, PageID.3125.) While McShane claims he heard no such announcement, he also testified that he was in "a corner bathroom in the basement" when the raid began and that he suddenly heard a "large amount of noise" and then "pounding and . . . a lot of yelling." (ECF No. 85-3, PageID.2652.) By the time he emerged from the bathroom, the officers were standing at the top of the basement stairs. (*Id.*) Even construing all inferences in favor of Plaintiff, however, there is no genuine conflict between McShane's testimony and the officers' testimony that they announced themselves. The assumed fact that McShane did not hear officers yelling an announcement, understandable given his location in the home at the time, does not equate to the absence of an announcement. *See also Pierce v. Burkart*, No. 03-74250, 2005 WL 1862416, at *5 (E.D. Mich. Aug. 4, 2005) (Edmunds, J.) ("Testimony by occupants of the home that they did not hear the police knock and announce does not give rise to a reasonable inference that the police failed to do so and thus is insufficient to defeat summary judgment.").

cause while conducting a search in that person's home pursuant to a validly executed search warrant." *Harris v. Langley*, 647 F. App'x 585, 592 (6th Cir. 2016) (citing *Michigan v. Summers*, 452 U.S. 692, 700 (1981)). As a result, it is clear Defendants acted appropriately under *Summers* when they briefly detained Plaintiff. Furthermore, the large quantity of marijuana plants and processed materials readily apparent in the house during the search also independently established probable cause supporting at least a short detention as occurred here. To the extent that Plaintiff alleges excessive force was used to effectuate such a detainment, that claim is barred by the statute of limitations. *See, supra,* Section III.A.

### E. Municipal Liability — *Monell* Claim

Plaintiffs argue that Defendant City of Detroit is liable under *Monell* because "(1) officials with final decision-making authority ratified the illegal actions [of Defendant officers]; and (2) the City failed to adequately supervise its officers; and (3) the existence of a custom . . . or acquiesces to federal rights violations." (ECF No. 88, PageID.3150.)

*Monell* liability may arise "when execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [ ] injury." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). *Monell* claims provide an avenue for municipal liability for claims brought under § 1983. But "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000)).

Here, the court has now granted summary judgment to Defendants on all the alleged federal constitutional violations allegedly committed by city employees. "Without a constitutional violation, there can be no *Monell* claim as to the alleged [] claim." *See Ratcliff v. City of Detroit*, No. 19-cv-13458, 2021 WL 3032537, at *5 (E.D. Mich. July 19, 2021) (Murphy, J.). The court will therefore also grant summary judgment to the City of Detroit on Plaintiff's *Monell* claim. *See id.*

## IV. CONCLUSION

Plaintiff has failed to show that a genuine dispute of material fact exists as to whether his constitutional rights were violated when Defendant Detroit Police officers executed a search warrant on his home in March 2014. As a result, summary judgment will be awarded to the Defendants on all claims. Accordingly,

IT IS ORDERED that Defendant Officers' Motion for Summary Judgment (ECF No. 84) is GRANTED.

IT IS ORDERED that Defendant City of Detroit's Motion for Summary Judgment (ECF No. 85) is GRANTED.

IT IS ORDERED that Defendants' joint Motion for Summary Judgment (ECF No. 110) is GRANTED.

Inasmuch as all claims have not been resolved, the court will issue a separate judgment in favor of Defendants.

s/Robert H. Cleland                          /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 28, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 28, 2021, by electronic and/or ordinary mail.

                                        s/Lisa Wagner                              /
                                        Case Manager and Deputy Clerk
                                        (810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\18-13781.FRONTCZAK.MSJ.AAB.RHC.2.docx